Modified.

30 C.C.P.A.(Patents)

### In re LAUTENSCHLAEGER et al.
### Patent Appeal No. 4762.

Court of Customs and Patent Appeals.
June 1, 1943.

A. Ponack, of Washington, D. C., for appellants.

W. W. Cochran, of Washington, D. C., (E. L. Reynolds, of Washington, D. C., of counsel) for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting, in view of the prior art, all of the claims, 7 and 8, of an application for a patent alleging new and useful improvements in "A blood sugar lowering substance obtained from the pancreas and a process of preparing it."

The rejected claims read as follows:

"7. A substance obtained from the pancreas having, on injection, a prolonged blood-sugar lowering action and containing up to about 15 insulin units mg which comprises insulin in chemical combination with a substantial amount of a low molecular basic protein compound derived from the pancreas, said substance being insoluble in an aqueous medium having a pH-value between 6 and about 8.

"8. A substance obtained from the pancreas having on injection, a prolonged blood-sugar lowering action and containing about 12 to about 15 insulin units/mg, which comprises insulin in chemical combination with a low molecular basic protein compound derived from the pancreas, said substance being insoluble in an aqueous medium having a pH-value between 6 and about 8."

The references relied on are:

Walden, 1,520,673, December 23, 1924;

Macleod, Carbohydrate Metabolism and Insulin, 1926, pp. 70 to 74.

The alleged invention relates to an insulin preparation claimed to have a prolonged effect in lowering sugar in the blood stream. Appellants' purpose was to produce an antidiabetic in which the insulin was combined with a protein compound as naturally present in the pancreas, and they regarded the ordinary insulin as a cleavage product of the complex compound they thought exists in the pancreas. In manufacturing their sought product they proceeded by the well-known processes for obtaining insulin but under what they state are mild conditions. This means that the old processes for obtaining insulin were performed at low temperatures with all intermediate phases of the processes carried out as quickly as possible in order to avoid as far as possible breaking down the insulin compound as it naturally existed in the pancreas. Appellants considered their insulin product as less of a cleavage product from the natural insulin compound than ordinary insulin. Ordinary commercial insulin, it is said, precipitates from an aqueous solution at a pH between 5.3 and about 5.5 and its lowering effect on blood sugar is short. The insulin produced in accordance with appellants' application is precipitated from its aqueous solution at a pH between about 6 and about 8 and is alleged to have a prolonged blood sugar lowering action.

The Walden patent relates to the production of insulin, designated as a "Purified Antidiabetic Product". It discloses insulin made from pancreas glands by a process in which the product is precipitated from a solution which the patentee states has preferably a pH value of from 4.5 to 5.5, but which may have any value between 4 and 7. The patentee sought to keep the nitrogen content of the substance as low as possible, but states that it cannot be eliminated entirely and that such nitrogen is not more than 0.1 of a milligram per unit of antidiabetic activity and may be as low as 0.005 of a milligram per unit.

The Macleod reference describes a process of producing insulin by methods similar to that shown in the Walden patent and suggests precipitation from a solution having a pH value between 5 and 6. In the publication it is stated that " * * * there is no reason to believe that it [insulin] has as yet been isolated, even in a tolerably pure state * * *."

The Primary Examiner held the claims to be unpatentable by reason of lack of utility, and further rejected them as lacking invention over either of the cited references.

The Board of Appeals affirmed the examiner's decision rejecting the claims in view of the prior art, but otherwise reversed the decision.

Both of the tribunals below held that the only differences existing between the claimed substance and the products of the Walden and Macleod references were in degree of purity only and that there were no critical percentages or values involved to warrant an allowance of the appealed claims.

It will be noted that both of the references and the involved claims show the production of an antidiabetic substance from the pancreas. The claims here recite that the product on injection has a "prolonged blood-sugar lowering action". A "prolonged blood-sugar lowering action" is an indefinite limitation and in our opinion can add nothing patentable to the claims since there is no standard disclosed by which to determine whether or not such action is prolonged.

Neither of the references specifies the insulin content of its product, but it appears in the record that the standard insulin preparation contains 22 units per milligram and it is assumed that the references contain that quantity. The involved claims define the substance as containing "about 15" or "about 12 to about 15" insulin units per milligram. Therefore the claims are distinguished from the references with respect to the quantity of insulin units.

Claim 7 recites that the insulin is in chemical combination comprising a substantial amount of "a low molecular basic protein compound derived from the pancreas." and claim 8 recites the same combination comprising "a low molecular basic protein compound". Such compounds are disclosed in the products of the Macleod and the Walden references. As heretofore stated, the Macleod reference points out that it is not possible to be rid of such compounds and in the Walden patent it is stated that such compounds are present in small amounts.

Both of the references clearly indicate that the protein compound substances of the pancreas are not desirable in their product. However, since they are always present we think that the relative amount of the insulin and protein compound is immaterial in deciding the patentability of the involved claims. It will be noted that there is no recitation in the rejected claims of any definite amount of the protein compound. Surely we cannot hold that "a substantial amount" thereof, recited in claim 7, fixes any definite amount, for the reason that other materials besides the protein compound together with the weight of the insulin may sum up to a milligram in weight. Therefore, in our opinion, as far as those compounds are concerned, the claims clearly read on either of the references.

The last limitation recited in the claims is that the desired substance is "insoluble in an aqueous medium having a pH-value between 6 and about 8." In the Walden patent it is clearly disclosed that the product may be precipitated from a solution at any point within a pH range of 4 to 7. The upper portion of that range brings the product within the requirement of the claims. The Macleod reference points out that the pH range may be between 5 and 6. Since the high point of that range is the same as the low point of the limitation in the claims, it is urged in the brief of the Solicitor that to that extent it might be held that the range of the Macleod reference "substantially anticipates a requirement for a value between 6 and 8." However, since the substance of the Walden patent may be precipitated within the range defined by the claims it is not necessary to decide whether or not the range in the Macleod reference anticipates that of the appealed claims.

Apparently the only real difference between the product defined by the appealed claims and those shown by the Walden and Macleod references resides in the number of insulin units per milligram. Undoubtedly the strength or concentration of insulin per unit shown by the references is greater than that defined in the present claims. In contending that appellants' product possesses a patentable superiority over the products of the prior art, appellants rely on certain arguments accompanying a request to remand the application under the heading of "Utility." They quote portions of certain scientific writings which might be considered to be favorable to their contention, and make various statements as to what, in their opinion, is shown by other portions of the writings. Such fragmentary statements we do not consider to be sufficient to prove that the product of appellants is patentable over those disclosed in the prior art. If appellants were actually relying upon the articles, they should have included them in the record. We do not think that such quotations and comments can be treated as complete statements of fact in the absence of the entire written articles, and therefore they can have no evidentiary value.

Assuming, without holding, that the quoted portions of the articles referred to could be treated as being some evidence to support appellants' contention, nevertheless such quotations are insufficient to establish proof of any patentable superiority for the product claimed by appellants

over those disclosed in the references. The new product referred to in the articles is called "Nativinsulin." How it was made is not described, nor is it properly identified with anything shown in the application of appellants. While the quotations from the articles might indicate that "Nativinsulin" is similar in some respects to the substance defined by the rejected claims, it is not established that it is identical with the claimed product either in composition or method of preparation. The quotations from the articles do not show that "Nativinsulin" is superior to the products of the references. Comparison between "Nativinsulin" was stated in the articles to be made with "ordinary insulin" rather than the product of either of the references. Whether "ordinary insulin" is the same as the product of the references the record does not show.

For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed.

Affirmed.